**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

---

**ST. LOUIS INDUSTRIAL PROPERTIES, LLC and ST. LOUIS INDUSTRIAL PROPERTIES, LLC – SERIES 5,**

**Plaintiffs,**

**v.**

**SELECTIVE INSURANCE COMPANY OF AMERICA,**

**Defendant.**

**No. 4:25-CV-00059-SRC**
**District Judge Stephen R. Clark**
**JURY TRIAL DEMANDED**

---

# FIRST AMENDED COMPLAINT

---

COME NOW the Plaintiffs, St. Louis Industrial Properties, LLC and St. Louis Industrial Properties, LLC – Series 5, and for their First Amended Complaint against the Defendant, Selective Insurance Company of America, state as follows:

## PARTIES, VENUE, & JURISDICTION

1. Plaintiffs, St. Louis Industrial Properties, LLC and St. Louis Industrial Properties, LLC – Series 5, shall be referred to collectively as "Plaintiffs." Plaintiffs are both limited liability companies formed under the laws of the State of Missouri, with their principal offices also located in Missouri. Plaintiffs consist of multiple members, all of whose citizenship and residency is located in either Missouri, Illinois, and/or New York and are diverse from that of Defendant—*i.e.*, none of the members is a citizen of New Jersey.

2. Plaintiffs possess an insurable interest in the property located at and around 5463 Phantom Dr., Hazelwood, MO 63042, which is covered by the Policy (defined below) and listed as Premises Number 7 thereunder (the "Insured Premises"). (DE 1-1, at PageID# 33). The Insured

Premises is a commercial two-story structure with more than 100,000 square feet of roofing. The roofing system consists of a granulated modified bitumen cap sheet over 2-ply Asphalt Built-Up (BUR) over insulation above a metal deck.

3. Defendant, Selective Insurance Company of America ("Defendant"), is an insurance company organized and existing under the laws of the State of New Jersey with its principal office located in the State of New Jersey. Defendant is licensed to, and does conduct, insurance business in the State of Missouri, including St. Louis County.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Insured Premises is situated in this District and the events giving rise to the claim upon which this action is based occurred in this District.

## GENERAL ALLEGATIONS

### The Policy

6. At all times relevant hereto, Plaintiffs were insured pursuant to an insurance contract whereby Defendant agreed to insure the Insured Premises against property damage, bearing Policy No. S 2147772 (the "Policy"). (DE 1-1, at PageID# 31). A certified copy of the Policy was originally filed at DE 1-1 and is incorporated herein by reference as if set forth verbatim. As relevant hereto, the term of the Policy was February 6, 2023 through February 6, 2024 (*id.*, at PageID# 31), (although Defendant had insured the Insured Premises via predecessor policies for several years).

7. The Policy provided insurance coverage for direct physical loss or damage to the Insured Premises. (DE 1-1, at PageID# 91). The Policy is an "all risks" policy, which means that it provides insurance coverage for all direct physical loss or damage to covered property within the policy period, except as specifically excluded or limited by the Policy. (*Id.*).

8. The Policy's coverage for the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation. (DE 1-1, at PageID# 106). Replacement cost coverage is not calculated "at the time of the loss." (*Id.*).

9. The Policy provided limits of insurance coverage for the Insured Premises of $11,583,595.00. (DE 1-1, at PageID# 64). The Policy also provides Ordinance or Law coverage. (DE 1-1, at PageID# 52).

10. The Policy included a wind and hail deductible of $750,000.00 for the Insured Premises. (DE 1-1, at PageID# 67).

11. Pursuant to the Policy, Plaintiffs paid a premium to Defendant in exchange for insurance coverage.

12. Plaintiffs paid the required premiums at all times relevant to this First Amended Complaint.

13. When Defendant insured the Insured Premises, it made no recommendations for roof repairs or maintenance, issued no roof exclusion, and satisfied itself that the roof was in good condition and suitable for its risk appetite.

14. Defendant conducted an underwriting inspection of the Insured Premises in 2021 and indicated in a written report that the roof was in "good" condition.

## The Loss

15. On or about May 13, 2023 (during the Policy period), a severe hailstorm struck the Insured Premises, causing substantial damage (the "Loss").

16. As a result of the Loss, the Insured Premises suffered immediate and direct physical loss, including but not limited to, widespread hail damage to the roof and other exterior components, which includes vent caps and rooftop HVAC units.

17. The Policy was in effect at the time of the Loss.

18. As it relates to the Loss, there are no applicable exclusions or limitations.

19. The damage is visible to the naked eye and was clearly caused by hail as a result of the Loss.

20. The damage requires full replacement of the roof of the Insured Premises down to the deck, among other things.

## The Insurance Claim & Investigation

21. Plaintiffs promptly notified Defendant of the storm damage, and Defendant assigned the Loss a claim number, 22528945.

22. Defendant subsequently retained Rimkus Consulting (an engineering firm) ("Rimkus") to inspect the Insured Premises for hail damage.

23. Rimkus issued a report dated October 26, 2023 that confirmed that hail fell at the Insured Premises on May 13, 2023.

24. Rimkus determined that the Insured Premises was damaged by hail. However, Rimkus stated that the damage caused by hail was limited to the soft metals (downspouts, vent caps, parapet caps, etc.) and HVAC at the Insured Premises and did not include damage to the roof of the Insured Premises.

25. On or about November 7, 2023, Defendant provided Plaintiffs an estimate of the Loss in the amount of $58,701.82 (RCV) that included replacement of certain soft metals and HVAC combing.

26. Defendant's assertion regarding the amount of loss was factually false.

27. On November 7, 2023, Defendant issued a letter asserting that the amount of loss fell below the Policy's deductible, and it therefore declined to issue any payment for the Loss.

28. To date, Defendant has paid $0.00 to Plaintiffs with respect to the Loss.

29. Defendant has failed to indemnify Plaintiffs, as required by the Policy, and Plaintiffs have not been properly compensated for the damages to the Insured Premises.

30. In August 2023, Plaintiffs' general contractor, Hailsolve, prepared an initial scope of loss (to document the scope of damages at the Insured Premises) that called for full roof replacement down to the deck and provided a total cost of $2,341,330.41.

31. With the roof replacement estimated by Hailsolve at the cost of $2,341,330.41 (less the Policy's $750,000.00 wind and hail deductible), the amount in controversy is, at a minimum, $1,591,330.41.

32. As pricing increases over time due to inflation (among other factors), the amount of the replacement cost for these repairs may also increase.

33. Hailsolve likewise estimated an additional $744,968.55 in ordinance or law coverage.

<u>Defendant Ignored Supporting Evidence Supplied by Plaintiffs<br>& its Own Pre-Loss Underwriting Inspections</u>

34. Prior to the Loss, Plaintiffs' contractor periodically inspected the roof of the Insured Premises. During roofing inspections conducted in October 2021 and July 2022, no hail damage was present on the roofing surface. When Plaintiffs' contractor conducted its next inspection in

August 2023 (*i.e.*, after the May 2023 hailstorm), hail damage to the roof was immediately apparent and plainly visible.

35. After Defendant declined to make payment for the Loss and refused to acknowledge the obvious hail damage to the roof of the Insured Premises, Plaintiffs sent Defendant two meteorologist reports confirming the presence of large hail and strong winds on May 13, 2023, as well as a written report from a structural engineer that confirmed the significant hail damage to the roof necessitated replacement.

36. Plaintiffs also reminded Defendant of its pre-Loss underwriting reports that indicated the roofs were in "good" condition, and they explained (and showed) existence of "before" photographs depicting no damage, as compared to "after" photographs reflecting significant damage.

37. Based on the information provided to Defendant, no reasonable insurance company could deny that the roof had been damaged as a result of the Loss.

38. Despite these undisputed facts, Defendant responded on September 24, 2024 that its prior determination and coverage position was unchanged, and again, that no payment would be issued.

<u>The Loss is Compensable Pursuant to the Policy</u>

39. Hail damage is covered by the Policy.

40. Plaintiffs fulfilled all of the duties after the Loss that were imposed upon them by the Policy.

41. All conditions precedent to obtaining payment of benefits under the Policy have been complied with, met, waived by Defendant, or otherwise satisfied.

42. Despite the significant, undeniable, and obvious hail damage to the Insured Premises and the fact that Plaintiffs are at no fault in this matter, Defendant has wrongfully refused to pay Plaintiffs' claim in full, in contravention of the express terms and conditions of the Policy, as well as Missouri law.

43. Pursuant to the Policy's terms, Defendant is obligated to pay Plaintiffs for the loss they suffered. Nonetheless, Defendant has breached—and continues to breach—its obligations to Plaintiffs by failing and refusing to tender to Plaintiffs the insurance benefits under the Policy and by failing to compensate Plaintiffs for this covered Loss.

44. Defendant has failed to indemnify Plaintiffs for the damage to the Insured Premises as a result of the Loss.

45. To date, Defendant has failed to fully and properly pay Plaintiffs' claim, as required by the Policy.

46. Defendant's failure and refusal to pay for the Loss is without reasonable cause or excuse, and there is no reasonable coverage dispute concerning the Loss.

47. Defendant's failure to and refusal to pay for the Loss is a material breach of the Policy and is without justification.

## COUNT I

## Breach of Contract

48. Plaintiffs incorporate by reference all of the above paragraphs as if fully set forth herein.

49. The Policy issued by Defendant to Plaintiffs is a binding contract and is supported by valid consideration.

50. Defendant is in total, material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant

breached its contract with Plaintiffs by its failure and refusal to fully and promptly pay the amounts owed to Plaintiffs as a result of the Loss and as required by the terms of the Policy.

51. As a result of Defendant's breach of contract, Plaintiffs sustained substantial, compensable losses for the amounts claimed under the Policy, including but not limited to, amounts owed pursuant to the Policy for the damage to the Insured Premises, and all other amounts to which Plaintiffs are contractually entitled pursuant to the Policy, as well as consequential damages, plus interest thereon.

52. Defendant's actions and breaches have further caused Plaintiffs great and substantial harm due to the fact that they have been unable to repair and/or replace, with like kind and quality, much of the damage caused by the Loss as a result of the financial hardship unduly placed upon them as a direct and proximate result of Defendant's failure to pay Plaintiffs the proper amounts as required by the Policy.

53. By reason of Defendant's breach, Plaintiffs have been deprived of the benefits due and owing under the Policy.

54. Defendant is liable to Plaintiffs for their losses.

55. As a direct and proximate result of Defendant's breach of the terms of the insurance contract, Plaintiffs have suffered and continue to suffer damages, at a minimum, of $1,591,330.41—and in excess of $75,000.00.

**WHEREFORE**, Plaintiffs pray this Court enter an award against Defendant for: compensatory damages; consequential damages; pre-judgment interest; costs of this action; specific performance of the Policy; and such other and further relief this Court may deem just and proper.

## COUNT II

**Vexatious Refusal to Pay - Mo. Rev. Stat. § 375.420**

56. Plaintiffs incorporate by reference all of the above paragraphs as if fully set forth herein and further state:

57. Despite proper demand for payment for the coverage provided under the terms of the Policy, Defendant has failed, neglected, and refused to make full payment to Plaintiffs under, and in accordance with, the terms and provisions of the Policy.

58. Defendant intentionally refused to pay Plaintiffs' claim for the Loss without reasonable cause or excuse, as evidenced, in part, by Defendant's actions as described below:

a. Defendant misrepresented: (i) the facts regarding the investigation of Plaintiffs' claim; and (ii) the Policy provisions relating to Defendant's coverage and payment obligations;

b. Defendant failed to attempt in good faith to effectuate the coverage provisions provided by the Policy;

c. Defendant failed and refused to attempt in any reasonable manner to undertake adequate claim investigation efforts and ignored facts and evidence making coverage clear, obvious, and apparent;

d. Defendant refused and failed to conduct a reasonable investigation of Plaintiffs' claim based on all available information;

e. Defendant refused and failed to obtain all reasonably available information and generally ignored Plaintiffs' valid claim;

f. Defendant failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies;

g. Defendant failed to promptly provide Plaintiffs with a reasonable explanation for its refusal to pay Plaintiffs' claim;

h. Defendant failed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

i. Defendant made untrue, false, and fabricated representations regarding the existence of damage and the coverage provided by the Policy, all while Defendant knew that these representations were untrue;

j. Defendant failed to promptly provide a reasonable and accurate explanation of its justifications and reason for not paying Plaintiffs' claim; and

k. Defendant engaged in such other acts toward Plaintiffs that are contrary to the duties owed to Plaintiffs as established by the customs and practices in the industry, the law, and the Policy.

59. Defendant's refusal to pay Plaintiffs the amounts due and owing under the policy of insurance is vexatious and without reasonable cause or excuse, and Plaintiffs are entitled to the relief and remedies provided under Mo. Rev. Stat. § 375.420, including additional damages from Defendant in the amount of twenty percent (20%) of the first fifteen hundred dollars ($1,500) of the loss, ten percent (10%) of the amount of the loss in excess of fifteen hundred dollars ($1,500), and a reasonable attorney's fee.

**WHEREFORE**, Plaintiffs pray this Court enter an award against Defendant for vexatious damages to be calculated pursuant to Mo. Rev. Stat. § 375.420, including a reasonable attorney's fee, and such other further relief this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a jury.

Respectfully submitted,

/s/Clinton H. Scott
CLINTON H. SCOTT
(MO Bar #71257)
clint@msb.law
BAKER G. EVANS*
(TN Bar #039868)
baker@msb.law
Attorneys for Plaintiffs

**McWHERTER SCOTT & BOBBITT, PLC**
54 Exeter Rd., Ste. D
Jackson, Tennessee 38305
Telephone: (731) 664-1340
Facsimile: (731) 664-1540

***admitted *pro hac vice***

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, a true and correct copy of the above and foregoing **FIRST AMENDED COMPLAINT** was filed with the Clerk of the United States District Court of Eastern Missouri by using the CM/ECF electronic filing system, which will send notification of such filing to the following counsel of record:

Meredith A. Webster
Lisa L. Martin
KUTAK ROCK LLP
2405 Grand Boulevard, Suite 600
Kansas City, MO 64108
meredith.webster@kutakrock.com
lisa.martin@kutakrock.com

/s/Clinton H. Scott